THE GREENWOOD PACKING PLANT, GREENWOOD, SOUTH CAROLINA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105211. Promulgated February 25, 1942.

*Theodore B. Benson, Esq.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

432

[redacted]

OPINION.

BLACK: The questions which we have to decide in the instant case are as follows:

(1) Did the Commissioner correctly determine that the petitioner realized taxable gain of $5,500 in 1936 from the sale of a building in that year to two of its stockholders, which building petitioner had acquired in 1935 at no cost from its lessee, who had erected the building in 1934 and relinquished the possession of it to petitioner in 1935?

(2) Did the Commissioner correctly disallow $199.62 of a claimed loss of $600 by petitioner from fire damages in 1936?

(3) Is the petitioner entitled to a credit of $1,000 under section 26 (c) of the Revenue Act of 1936 in computing its surtax on undistributed profits?

We shall first take up and decide issue (1). Both parties are agreed that the building erected by a lessee in 1934 upon a lot owned by petitioner was released and abandoned to petitioner in the year 1935 and that the building had a fair market value of $5,500 at the time it was turned back to petitioner. Both parties agree that under the decision of the Supreme Court of the United States in *Helvering* v. *Bruun*, 309 U. S. 461, which was decided subsequent to 1935 and 1936, the value of the building was taxable income to petitioner in 1935.

It is also conceded that petitioner did not return the value of the building in question as income in 1935. Respondent contends that, by the failure to report as income in 1935 any value for the building thus acquired by abandonment, the petitioner in effect declared that such property had no value at that time and the petitioner can not,

since the statute of limitations has run as to the year 1935, now take advantage of its omission in 1935 by claiming there was no taxable gain when it sold the property in the taxable year 1936.

Respondent in his answer did not affirmatively plead that petitioner was estopped to so claim. The substance of petitioner's contention in response to the position of respondent is that whatever gain it received from the repossession of the premises occurred in 1935 and was taxable in that year; that in good faith it filed its income tax return for 1935 reporting no gain from such transaction because the Supreme Court had not yet decided *Helvering* v. *Bruun, supra;* that its mistake in not reporting the gain in that year was one of law; and that it made no misrepresentation of any fact to the Commissioner with reference to said transaction; that when it sold the building in question in 1936 for $5,500 it was for the same price as its value when acquired in 1935 and, therefore, it had neither gain nor loss in 1936 on the sale and is not estopped to so contend.

Incidentally it should be noted that the respondent makes no claim for an adjustment for depreciation (sec. 113 (b) (1) (B) and sec. 114 (a), Revenue Act of 1936) on the building in determining gain or loss. The adjustment for the period November 25 to December 31, 1935, the respondent concedes would be trivial, and any reduction for depreciation from January 1 to July 1, 1936, the date of the sale, he concedes would be for all practical purposes offset by a corresponding allowance since this was a business property. (Sec. 23 (1), Revenue Act of 1936.)

Respondent did not plead estoppel in his answer, and, even if he had done so, we do not think the facts would have sustained it. Nevertheless, we think the Commissioner's determination that petitioner had a taxable gain of $5,500 on this property must be sustained. The following are the applicable provisions of the Revenue Act of 1936:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\*   \*   \*   \*   \*   \*   \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\*   \*   \*   \*   \*   \*   \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this Act or prior income tax laws. * * *

Did the property in question have any cost to petitioner? Admittedly it did not have any actual cost to petitioner. The building had been erected by petitioner's lessee without any cost to petitioner. If petitioner had taken the value of the property into its taxable income in 1935 then it would have had thereafter a cost basis of the fair market value so taken into income. But it is conceded that petitioner did not take the value of this property into its taxable income in 1935, the year in which it was acquired.

Under these circumstances, we do not think that it can claim a cost basis of $5,500 when it sold the property in 1936 for that amount. See *Alamo National Bank of San Antonio, Executor*, 36 B. T. A. 402; affd., 95 Fed. (2d) 622; *William Merriam Crane*, 27 B. T. A. 360; affd., 68 Fed. (2d) 640.

We think the instant case is distinguishable from *American Light & Traction Co.*, 42 B. T. A. 1121. In that case the question was whether the taxpayer should retain the old basis of cost of its transferor or take the normal basis of cost which it had paid for the debentures sold. The taxpayer clearly had the real basis of cost which it was claiming, but the Commissioner claimed that it should take the basis of its tranferor because certain gains had not been reported in the transaction in a prior year. We held there was no estoppel and that the taxpayer had the right to claim its real cost basis. We think that situation is different from the one we have here and is, therefore, distinguishable on its facts. On this issue we hold for the respondent.

We next take up issue (2). Petitioner had a fire loss in 1936, for which it was compensated by an insurance company to the extent of $2,000. In its income tax return it claimed a deduction of $600 on account of this fire loss, which represented damage to its property for which it was not compensated by insurance. Of this $600 claimed loss the Commissioner disallowed $199.62 on the ground that petitioner had sustained losses not compensated by insurance to the extent of only $400.38.

At the hearing the petitioner offered the testimony of two witnesses who gave testimony specifying the property which was damaged, the original cost of such property, the depreciation which had occurred since the property was purchased, and the nature and extent of the damage to the property by the fire.

From this evidence we are convinced that petitioner suffered a loss of at least $600 in excess of the insurance which is collected from the insurance company and we have so found in our findings of fact.

Accordingly the Commissioner's action in disallowing $199.62 of the claimed fire loss of $600 by petitioner is reversed.

The next and final issue which we have to decide is issue (3), whether petitioner is entitled to a credit of $1,000 under section 26(c) of the Revenue Act of 1936 in computing its surtax on undistributed profits.

The relevant portions of section 26(c) of the Revenue Act of 1936 are printed in the margin.[1]

It is perfectly clear that the written contract in question does not fall within section 26 (c) (1), for it nowhere prohibited the payment of dividends. Petitioner appears to concede that the contract in question does not fall under section 26 (c) (1), but petitioner contends that it is entitled to the credit under section 26 (c) (2). Even if we assume that the language of the contract does fall within the ambit of section 26 (c) (2), we think that the claim for credit must nevertheless fail. Respondent points out correctly in his brief, we think, that it is fundamental that as a prerequisite to the credit claimed under section 26 (c) (2) it must be shown that the taxpayer corporation either paid or set aside within the taxable year the amount for which it claims credit in discharge of its debt. See paragraph (3) of the things stated to be necessary to a credit under section 26 (c) (2) in *G. B. R. Oil Corporation*, 40 B. T. A. 738. Respondent points out that there is no evidence whatever that any amount, current earnings, or profits, or any other amount was in fact paid to the Bank of Greenwood in the taxable year or irrevocably set aside in its behalf.

The petitioner did offer in evidence the contract in question and we have set it out in our findings of fact, but certainly petitioner did not offer any evidence as to any payments made to the bank in 1936 on petitioner's indebtedness owed to it, nor is there any evidence that any of petitioner's profits or other funds were irrevocably set aside during the taxable year in the bank's behalf. In this state of the evidence we sustain respondent's action in disallowing the credit

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*   \*   \*   \*   \*   \*   \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \*  \*  \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. \*  \*  \*

claimed. There must be either a paying or irrevocable setting aside within the taxable year of the amount claimed as a credit under section 26 (c) (2). Cf. *Strong Manufacturing Co.*, 41 B. T. A. 1273; affd., 124 Fed. (2d) 360.

*Decision will be entered under Rule 50.*